SEAN K. KENNEDY (No. 145632)
(Sean_Kennedy@fd.org)
Federal Public Defender
BRIANNA J. FULLER (No. 243641)
(Brianna_Fuller@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone: (213) 894-4784
Facsimile: (213) 894-0081

Attorneys for Defendant
ANTHONY REYNA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>ANTHONY REYNA,<br><br>             Defendant. | NO. CR 09-488-DDP<br><br>DEFENDANT'S POSITION RE: SENTENCING; EXHIBITS<br><br>Sentencing Date: February 22, 2010<br><br>Sentencing Time: 1:30 p.m. |

Mr. Reyna, through his counsel of record, Deputy Federal Public Defender Brianna J. Fuller, hereby submits his position regarding sentencing.

//
//
//
//
//
//
//

### I.   Objections to the PSR

The defense has no objections to the Guideline calculation contained in the Pre-Sentence Report.[1]  The defense disagrees with the PSR's recommendation for a sentence at the high end of the Guideline range.  It believe that a sentence at the low end of the Guideline range is sufficient, but not greater than necessary, to further the goals of sentencing.  As such, the defense requests of a sentence of 30 months.

### II.   Appropriate Sentence

The Court must, in all cases, impose a sentence in line with the "overarching provision" of Section 3553(a), that is, that courts should "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).  Under Section 3553(a), the Court should consider Mr. Reyna's history and characteristics, the nature of the instant offense, the need to punish Mr. Reyna, the need to deter him from future misconduct, and the advisory range under the Sentencing Guidelines.

The nature of the offense is serious.  On the other hand, the nature of the offense is fully accounted for in the Guidelines.  The Guidelines take into account that Mr. Reyna was a "prohibited person" at the time of the offense.  They take into account Mr. Reyna's criminal history, and, importantly, that Mr. Reyna has no crimes of violence or drug trafficking offenses that would increase his sentence.  No greater sentence is necessary to account for the nature of the offense or Mr. Reyna's background, because those facts are already accounted for in the Guideline range.

Mr. Reyna's history and characteristics counsel in favor of a low-end sentence.  Mr. Reyna grew up without his parents and without any significant

---

[1] The PSR was not disclosed in full compliance with Federal Rule of Criminal Procedure 32, in that it was disclosed approximately 32 days prior to sentencing. Defense counsel discussed with Mr. Reyna his right to receive a full 35 days to review his PSR, and he agreed to waive that right when he appears in Court for sentencing. Thus, the defense intends to go forward on February 22, 2010, as scheduled.

stability. His dad was in and out of prison throughout his childhood. Mr. Reyna's mother was heroin-addicted woman unable to care for her children. At an early age, Mr. Reyna was passed back and forth between family members, gaining the most stability when he was with "Mama Rita," his aunt. His father was murdered when he was ten years old, and at that point, he went to his aunt's house for the rest of his childhood. Mr. Reyna was the second generation of children raised by Mama Rita, and she provided strict discipline. As a teenager, Mr. Reyna chafed against his aunt's discipline, and he decided, at the age of fifteen, to go to his mother's house. There he was given total freedom, because his mother was still addicted to drugs and did not provide any structure. According to the PSR, it was at this age that he turned to gangs to fill in the void, and also the point at which he began getting in trouble.

Despite his criminal history, Mr. Reyna has many redeeming qualities. He has been with the mother of his children, Rosalva McHenry, for sixteen years. He is a good father who has been present in his children's lives. Before he was taken into custody, he would take them to school every day and pick them up in the afternoon and would make sure they did their homework. Mr. Reyna encourages them to study so that his children can have a better chance at life than he did. They were thriving in his presence. His girlfriend's parents are supportive, and in turn, he has taken care of them. After the police tore up their house while executing the search warrant, Mr. Reyna and his brother-in-law taught themselves how to do home repairs from a book, and did a lot of work to repair the house. He wanted to fix the harm that was caused to his family because of his behavior. Mr. Reyna is a quick study, and taught himself skills that he will be able to apply to construction work in the future.

Mr. Reyna doesn't ask for the Court to consider his history for purposes of sympathy. Instead, Mr. Reyna realizes the harm that the lack of stable familial support meant to him. And he sees the same patterns being repeated in his son. His oldest son, who was generally under control while he was in the home, has been

acting up. He was skipping school, and his mother has been unable to control him. Mr. Reyna arranged for his aunt Rita to take care of him while he's in custody. When he's there, Andrew has been more under control. But that is a temporary fix. Mr. Reyna also hears that his daughter turning into a bully at school. She too is suffering without his presence in the home.

These are his main concerns – his older children are entering a crucial moment in their lives, and he doesn't want his children following in his footsteps because of his faults. He doesn't want his own son to appear before the Court in twenty years, in the same cycle that he was in. With a 30-month sentence, Mr. Reyna will more quickly be able to return to his family and to his son, while his son is still a teenager. This is his goal.

For these reasons, the defense requests a low-end sentence of 30 months in custody.

**III.   Conditions of Supervised Release**

The defense objects to condition five, which precludes being present in a location known to be a place where Eastside Paramount gang members meet or assemble. The condition is vague and a greater deprivation than necessary to further the goals of supervision. Condition four, to which the defense does not object, forbids associating with known Eastside Paramount gang members other than family members. That condition alone is sufficient to ensure that Mr. Reyna does not fall into associations with Eastside Paramount gang members. To also add a prohibition against being in areas known to be locations where gang members meet and assemble is a greater deprivation than necessary. It may cover parks, restaurants, malls, the homes of family members – places that are not any serious threat to Mr. Reyna's progress on supervision, so long as Mr. Reyna complies with condition four. Condition five is an invitation to future battles over what constitutes an area where gang members "meet" and whether Mr. Reyna knew of the character of the

location when he arrived there. Condition four is sufficient to further the goals of probation without opening the door to such issues.

## IV. Conclusion

For the foregoing reasons, the defense requests the Court impose a sentence of thirty months, with three years of supervision, and the conditions suggested in the recommendation letter, with the exception of condition five.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: January 28, 2010        By_____/s/_____
                               BRIANNA J. FULLER
                               Deputy Federal Public Defender

PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen years; that I am not a party to the above-entitled action; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served the DEFENDANT'S POSITION RE: SENTENCING; EXHIBITS.

On January 29, 2010, following ordinary business practice, service was:

[ x] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows:

[ ] By hand-delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By facsimile as follows:

[ ] By e-mail as follows:

Robert Leoning
United States Probation Officer
600 United States Court House
312 North Spring Street,
Los Angeles, California 90012

This proof of service is executed at Los Angeles, California, on January 29, 2010.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/
Toni Alcaraz